JAMES D. PENDERGRAFT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pendergraft v. Commissioner
Docket No. 26746-82.
United States Tax Court
T.C. Memo 1985-418; 1985 Tax Ct. Memo LEXIS 212; 50 T.C.M. (CCH) 752; T.C.M. (RIA) 85418; August 13, 1985. *212 Held: Petitioner's employment as an electrician assignee was indefinite. Thus, a deduction for expenses to travel to and from work is not allowable under section 162(a)(2). James D. Pendergraft, pro se. Helen Theo, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined deficiencies and additions to tax under section 6653(a) [1] as follows: Addition
Deficiency
to Tax
1979
$2,774.72
$138.74
1980
53.00
2.65
*213 After concessions, the only issue for decision is whether petitioner are allowed to deduct expenses incurred in 1979 and 1980 for travel to and from work under section 162(a)(2). FINDINGS OF FACT Some of the facts have been stipulated. Petitioner resided in Arab, Alabama, when he filed the petition in this case and during the years in issue. Petitioner is an electrician by trade. On August 3, 1978, Petitioner began to work as an electrician assignee for the Tennessee Valley Authority (TVA) at the Bellefonte Nuclear Project (Bellefonte project) in Hollywood, Alabama. [2] An assignee lacks the qualifications of a journeyman, but can work in accordance with TVA and Nuclear Regulatory Commission guidelines. The TVA hired assignees at the Bellefonte project because of a shortage of available journeymen electricians. When petitioner *214 was employed by TVA as an assignee, his type of appointment was a Trades and Labor Temporary Construction Hourly, to be terminated on October 24, 1978. On October 18, 1978, his status was changed to Trades and Labor Temporary Construction Hourly with no termination date. Workers under this appointment were employed until their services were no longer needed. The word "temporary" was used by TVA to distinguish hourly workers from salaried workers. Petitioner was hired under the special conditions that an an assignee, he would be laid off before non-assignees and he would be terminated when qualified candidates became available. Because of these conditions, his duties were restricted. Petitioner remained employed until May 22, 1980, when TVA terminated petitioner's employment because of a reduction in force. The requirements at the Bellefonte project for electrictians for the year 1979, as projected in 1978, were 625. For 1979, 595 electricians were on call. The 1979 projection for the 1980 year was 308 although 682 were actually employed. The projection made in 1980 for 1981 was 410 although 664 were actually employed. All assignee electricians were laid off by May 1980. *215 We take judicial notice of the following facts found in , which also involved the Bellefonte project. The Bellefonte project in 1978 had a projected completion date of 1983. This completion was revised as follows: [3]
Time of Revised Projection
Revised Projected Completion Date
April 1979
August 1985
May 1980
August 1986
Housing in the Bellefonte project area for workmen was critically short during this period. During 1979 and 1980, until termination of employment, petitioner drove from his residence in Arab, Alabama to the Bellefonte project on a daily basis. The distance between the Bellefonte project and the residence occupied by petitioner from January to July 1979 is 61 miles and thus, a round trip is 122 miles. From July 1979 the distance from petitioner's changed residence is 52 miles. On his return for the 1979 taxable year, petitioner claimed automobile expenses as an employee business expense deduction in the amount of $4,627. For the year 1980 the deduction claimed *216 was $2,048. These deductions were disallowed by respondent. OPINION Respondent argues that petitioner is not entitled to deduct the expenses at issue because (1) the expenses were not incurred "while away from home"; (2) petitioner's residence in Alabama was maintained for personal rather than business reasons; and (3) petitioner's employment by TVA was indefinite rather than temporary. Personal expenses are ordinarily not deductible. Section 262. Section 162(a)(2), however, allows the taxpayer to deduct certain expenses if they are traveling expenses paid or incurred while "away from home in the pursuit of a trade or business" if he can establish they were: (1) Reasonable and necessary traveling expenses; (2) incurred while "away from home"; and (3) incurred in pursuit of a trade or business. ; . This Court has held that a taxpayer's "home" for the purposes of section 162(a)(2) is the vicinity of his principal place of business whenever his personal residence is not located in the same vicinity. ; *217 . There is however an exception to this rule when a taxpayer with a well-established tax home accepts temporary employment as opposed to indefinite or indeterminate employment elsewhere. In this context, temporary employment means the sort of employment in which termination within a short period of time could be logically expected and foreseen. , affg. a Memorandum Opinion of this Court; . See also . On the other hand, whenever termination of employment cannot be expected or foreseen within a fixed or reasonably short period of time, the taxpayer's tax home shifts to such place of employment so that the cannot satisfy the "away from home" requirement. . Furthermore, when employment which was temporary in contemplation at the date of its commencement becomes indeterminate in duration, then "the situs of such employment for purposes of the statute becomes the taxpayer's *218 home." . Employment may change from temporary to indefinite due to changed circumstances or simply by the passage of time. . Whether a taxpayer's employment is "temporary" as opposed to "indefinite," "substantial," or "permanent" is a question of fact. ; ;Among the relevant factors to be considered is whether the taxpayer logically expected that the employment would last for a short period of time or that the job itself would not extend beyond a reasonably brief duration. The burden of proving that his employment was temporary rests on petitioners. ; Rule 142(a). In the present case it is clear that during 1979 and until May 1980, termination of petitioner's employment on the Bellefonte project could not be logically expected or foreseen within a fixed or reasonably short period of time. *219 The contract of employment provided that petitioner would be employed until his services were no longer needed. The fact that petitioner's contract stated that he was a temporary employee is not determinative of the issue herein. ; . We understand the confusion caused by the fact that the meaning of the word "temporary" in petitioner's contract is different from the meaning of the word "temporary" as a term of art for business expense purposes under section 162.In view of the extensive judicial precedent on this tax issue, petitioner must look to the Congress for establishment of a different rule. The projected completion date for the Bellefonte project was continuously revised and extended into the future. There was no reason to believe during 1979 and 1980 that the job would not extend indefinitely into the future. We have no evidence as to why the demand for electrician assignees ceased in 1980, e.g., whether more journeymen became available or the demand for electricians was reduced.[4] By the time petitioner was laid off, he had worked at the Bellefonte project *220 for 22 months. That is not in and of itself a temporary period. See Neither is it relevant that it may not have been reasonable for petitioner to have acquired a permanent residence in the area of the Bellefonte project if one could have been located. It is clear from the record that during 1979 and 1980 petitioner's employment was indefinite. Petitioner has not met the "away from home" requirement; hence petitioner's travel expenses are not deductible under section 162(a)(2). [5]
*221 Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
2. This is one of a group of six cases involving hourly workmen at the Bellefonte project, all of whose cases were consolidated for trial only.↩
3. Although the completion dates have been revised, no reactors have been deferred or cancelled at the Bellefonte plant.↩
4. We do note that two of the other petitioners in this group of six were electricians, but by January 1980 both were journeymen. Neither was terminated by TVA until 1983.↩
5. Our attention was called to two summary opinions, Cook v. Commissioner, T.C. Summary Opinion 1980-752, and Atnip v. Commissioner,↩ T.C. Summary Opinion 1980-761, which petitioner believes to have involved employment on the Bellefonte project. In each case the taxpayers were allowed travel expense deductions. Neither opinion sets forth the facts of this particular case so we cannot compare those cases to any of this group of six cases. However, those were summary opinions and they are not precedent for any other case, although we of course recognize that all of our opinions should be consistent.